STATE

v.

**William J. RUDACEVSKY.**

**No. 80–423–C.A.**

Supreme Court of Rhode Island.

May 26, 1982.

Dennis J. Roberts, II, Atty. Gen., Charles M. Nystedt, Sp. Asst. Atty. Gen., for plaintiff.

Paul J. DiMaio, Joni Seplocha, Providence, for defendant.

## OPINION

KELLEHER, Justice.

A Superior Court jury returned a guilty verdict against the defendant, William J. Rudacevsky, after its consideration of evidence relating to a criminal information that charged him with the unlawful delivery of a controlled substance, cocaine, to a police undercover agent. The evidence adduced at trial was simple and direct but somewhat contradictory. Hereafter we shall refer to the defendant either as the defendant or as Rudacevsky.

Ralph Jones, Jr. (Jones), a member of the Providence police department's narcotics division, told the jury that during the late afternoon of July 25, 1978, while working under cover, he entered a Broad Street restaurant known sometimes as Rudy's Restaurant and at other times as Billy's Restaurant. When Jones encountered Rudacevsky, he asked if Billy was around. After receiving an affirmative answer, Jones asked Rudacevsky if he had anything "for the head." According to Jones, Rudacevsky went behind the counter and produced a bag of cocaine having a purchase price of $50. When Jones offered $45 with a promise of later payment of the additional $5, the delivery was effected and the deal consummated. After paying the $45, Jones left the premises with the bag and walked a short distance to an unmarked vehicle where he rejoined his partner, Sergeant Ronald Lewis. A toxicologist identified the bag's contents as cocaine. Sergeant Lewis testified that he had watched from a block away as Jones entered and left the restaurant before reporting to him, "I scored."

Rudacevsky told the jury that Jones was no stranger to him because he had seen Jones frequenting a bar in Cranston during late 1977 and early 1978. According to Rudacevsky, all of the bar's habitués were well aware that Jones was an undercover agent. In fact, every one of them believed that Jones was responsible for a "bust" which resulted in the arrest of "Gary" and "Mike," two of the bar's regular customers. Consequently, Rudacevsky insisted that the alleged Broad Street delivery never occurred because "I would never sell to a policeman." He also denied that Jones had ever been to his restaurant.

Rudacevsky was the only witness for the defense. After he had finished testifying, Jones returned to the witness stand and told the jury that he had never been to the Cranston drinking establishment and that he had first learned of the bar's existence when Rudacevsky testified. Jones reported that any drug-busting activities in which he is involved are limited to the geographical confines of the city of Providence.

Rudacevsky's appeal centers on certain rulings made by the trial justice when considering the discovery provisions of the Superior Court Rules of Criminal Procedure (Super.R.Crim.P.), a defense motion calling for the sequestration of prosecution witnesses, and defendant's attempt to offer additional evidence after Jones had testified as a rebuttal witness.

Immediately before the impaneling of the jury, Rudacevsky's attorney informed the trial justice that he had just received from the Attorney General's staff an amended response to the defense's original request for the names of the witnesses who were to testify for the prosecution. The amended response contained a new name, that of Sergeant Lewis. The state's trial counsel told the trial justice that the last-minute addition was a necessity because she had become aware of Lewis's involvement in the case only after she had conferred with Jones. The state's attorney assured the trial justice that the defense would be given a written summary of Lewis's proposed testimony.

When the trial justice inquired of defense counsel what he might suggest, counsel made it quite clear that his purpose in objecting to Lewis's appearance was "to suppress his testimony." Upon hearing this, the trial justice denied the so-called suppression motion.

Rule 16(i) of Super.R.Crim.P. provides for a variety of sanctions which may be imposed for a party's failure to comply with the rule's directive concerning supplying of information to one's adversary. A trial justice may preclude a party from introducing testimony of a person whose identity or statements were not disclosed, or grant a continuance, or fashion some other appropriate remedy.

Here, we cannot fault the trial justice for rejecting Rudacevsky's request for suppression, for, as we have said before, exclusion of a witness's testimony "is a drastic sanction in a trial whose goal is the ascertainment of truth." *McGonagle v. Souliere*, 113 R.I. 683, 688, 324 A.2d 667, 670 (1974).

The defendant's motion for discovery can be classified as a form motion that can be of use in all Superior Court criminal cases. It contains nine standard requests as well as appropriate spaces for typing in such pertinent data as the name of the county in which the criminal proceedings have originated, the defendant's name, and the date a copy of the motion was mailed to the Office of the Attorney General. The first item asks that the defense be allowed to inspect a copy of "[a]ll relevant written or recorded statements or confessions, signed or unsigned or written summaries of oral statements or confessions made by the Defendant, or copies thereof." The state's response to this request was, "None known to this office." Rudacevsky claims that this response constitutes a violation of the state's duty to disclose.

The violation allegedly occurred when Jones was permitted to testify about the content of the conversation he had held with Rudacevsky about the bag and the $50 asking price. Assuming that the restaurant conversation could be classified as either a confession or a statement, the state's negative response was right on target. A close look at the defense's demand indicates that Rudacevsky was seeking confessions, statements, or summaries that had been reduced to writing or electronically transcribed. However, Rudacevsky's demand missed its mark because the restaurant conversation was never transcribed by pencil, pen, or electronic means. *See State v. DeVito*, R.I., 414 A.2d 459 (1980).

Rudacevsky's final reliance on Super.R. Crim.P. 16 concerns the state's continued duty to disclose additional evidence that had previously been sought earlier in the litigation. Rudacevsky points to the place in Jones's testimony where the fact emerged that, after he had told the jury he had paid $45 for the cocaine, various documents within the information package indicated the payment to have been $25 rather than $45. Jones, who did not prepare the documents within the package, explained that the $25 figure was a typographical error and that he had first noticed the error earlier in the day while the selection of the jury was taking place. The witness also emphasized that the only exhibit he prepared was an envelope in which he had placed the bag of cocaine. The envelope was prepared shortly after the delivery, and it shows a purchase price of $45.

The trial justice saw no violation of the continuing obligation to disclose because, in her opinion, she did not feel that there was a duty incumbent on the police to go around and tell everyone about the typist's miscues. The trial justice as well as the jury obviously believed Jones's explanation for the inconsistency. From our point of view, we fail to see how the difference in figures was of crucial import to the defense, having in mind Rudacevsky's insistence that the alleged delivery never occurred and his avowed commitment never to "sell to a policeman."

Rudacevsky's sequestration motion had as its target Sergeant Lewis. Exclusion of witnesses from a courtroom during the taking of testimony during trial is a matter addressed to the sound discretion of the trial justice, and his or her exercise of that discretion will not be disturbed on appeal unless an abuse of this discretion is clearly evident. *State v. Mathias*, R.I., 423 A.2d 484, 486 (1980); *State v. Mancini*, 108 R.I. 261, 272–73, 274 A.2d 742, 748 (1971). The record here discloses no such abuse.

Rudacevsky's last claim of error involves the trial justice's rejection of his offer of proof that, if permitted, he would produce two witnesses (one the bar's owner and the other a customer) who would have testified that, like Rudacevsky, they saw Jones at the bar in Cranston. The offer of proof came after Jones had appeared as a rebuttal witness and had denied ever being inside the Cranston drinking establishment.

The regulation of order of proof is but another responsibility subject to the trial justice's exercise of sound judicial discretion. Ordinarily, in a criminal trial, the state is expected to adduce all of its evidence-in-chief before resting its case; the defense then follows by producing its evidence tending to establish the accused's nonculpability, which includes the contradiction or rebuttal of evidence offered by the state; and once the defense rests, the state has the opportunity of producing its rebuttal evidence. *Mayson v. State*, 238 Md. 283, 288–89, 208 A.2d 599, 602 (1965). It is only when new matters have been introduced in rebuttal, however, that a defendant has a right to reopen and present evidence not previously introduced. *Gregory v. United States*, 393 A.2d 132, 137 (D.C. App.1978); 6 Wigmore, *Evidence* § 1874 (Chadbourn rev. 1976).

Here, Rudacevsky's belated attempt to buttress his prior testimony about Jones's underground activities in Cranston would have been purely cumulative and should have been presented as part of the defense. We see no reason to disturb the trial justice's rejection of Rudacevsky's offer.

The defendant's appeal is denied and dismissed, and the judgment of conviction appealed from is affirmed.